United States District Court
Middle District of Florida
Jacksonville Division

**JENNIFER LYNN NORTHROP,**

    *Plaintiff,*

v.

                                             **NO. 3:25-cv-806-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Order

Proceeding under 42 U.S.C. § 405(g), the plaintiff requests judicial review of a final decision by the Commissioner of Social Security. Doc. 1. The plaintiff argues that the Administrative Law Judge (ALJ) erred in two ways: first, by failing to find good cause to permit her to appear by telephone at the administrative hearing; and, second, by failing to state the weight that he had assigned to mental health records. Doc. 13 at 1. The procedural history, evidence, and law are summarized in the ALJ's decision, Tr. 17–29, and the parties' briefs, Docs. 13, 19, and not fully repeated here.

### 1.

Section 405(g) governs the court's authority:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an

> individual who was a party to the hearing before the Commissioner …, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted). A court may not decide facts anew, make credibility findings, or reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

**2.**

Regulations prescribe the time, place, and manner of a hearing before an ALJ:

> (a) General. We set the time and manner(s) of appearance for any hearing. We will set the place of a hearing when we schedule you and any other parties to the hearing to appear in person or by agency video. ….

> (b) Place of hearing. If we set the place of the hearing, it can be in the 50 States[.] The "place" of the hearing is the hearing office or other site(s) at which you and any other parties to the hearing are located when you make your appearance(s) before the [ALJ] by agency video or in person. ….

> (c) Determining manner of appearance to schedule. We will schedule you or any other party to the hearing to appear by audio, agency video, online video, or in person. We may schedule you to appear by online video only if you agree to appear in that manner.

> > (1) When we determine your manner of appearance at the hearing, we consider the following factors:

> > > (i) Which manner of appearance would be the most efficient for conducting the hearing; and

(ii) Any facts in your particular case that provide a good reason to schedule your appearance by audio, agency video, online video, or in person.

….

(d) Objecting to appearing by audio, by agency video, or both. Prior to scheduling your hearing, we will notify you that we may schedule you to appear by audio or by agency video, or, if you agree, by online video. If you object to appearing by audio, by agency video, or both, you must notify us in writing within 30 days after the date you receive the notice. If you only object to appearing by audio, we may schedule you to appear in person, by agency video, or, if you agree, by online video. Similarly, if you only object to appearing by agency video, we may schedule you to appear in person, by audio, or, if you agree, by online video. If you object to appearing by both audio and agency video, and your residence does not change while your request for hearing is pending, we will schedule you to appear before the [ALJ] in person or, if you agree, by online video.

(1) If you notify us that you object to appearing by audio, by agency video, or both, more than 30 days after the date you receive our notice, we will extend the time period if you show you had good cause for missing the deadline. To determine whether good cause exists for extending the deadline, we use the standards explained in § 404.911 [standards for missing a deadline].

(2) Notwithstanding any objections you may have to appearing by audio and subject to [an exception for an incarcerated person], we will schedule you or any other party to the hearing to appear by audio when we cannot schedule you to appear by agency video or by online video and extraordinary circumstances prevent you from appearing in person. ….

….

(f) Objecting to the time or place of the hearing.

(1) If you wish to object to the time or place of the hearing, you must:

(i) Notify us in writing at the earliest possible opportunity, but not later than 5 days before the date

3

set for the hearing or 30 days after receiving notice of the hearing, whichever is earlier; and

(ii) State the reason(s) for your objection and state the time or place you want the hearing to be held. If the [ALJ] finds you have good cause, as determined under paragraph ([g]) of this section, we will change the time or place of the hearing.

(2) If you notify us that you object to the time or place of hearing less than 5 days before the date set for the hearing or, if earlier, more than 30 days after receiving notice of the hearing, we will consider this objection only if you show you had good cause for missing the deadline. To determine whether good cause exists for missing this deadline, we use the standards explained in § 404.911 [standards for missing a deadline].

(g) Good cause for changing the time or place. The [ALJ] will determine whether good cause exists for changing the time or place of your scheduled hearing. If the [ALJ] finds that good cause exists, we will set the time or place of the new hearing. A finding that good cause exists to reschedule the time or place of your hearing will generally not change the assignment of the [ALJ] or how you or another party will appear at the hearing, unless we determine a change will promote efficiency in our hearing process.

(1) The [ALJ] will find good cause to change the time or place of your hearing if he or she determines that, based on the evidence:

(i) A serious physical or mental condition or incapacitating injury makes it impossible for you or your representative to travel to the hearing, or a death in the family occurs; or

(ii) Severe weather conditions make it impossible for you or your representative to travel to the hearing.

(2) In determining whether good cause exists in circumstances other than those set out in paragraph ([g])(1) [sic] of this section, the [ALJ] will consider your reason(s) for requesting the change, the facts supporting it, and the impact of the proposed change on the efficient administration of the hearing process. Factors affecting the impact of the change include, but

4

are not limited to, the effect on the processing of other scheduled hearings, delays that might occur in rescheduling your hearing, and whether we previously granted you any changes in the time or place of your hearing. Examples of such other circumstances that you might give for requesting a change in the time or place of the hearing include, but are not limited to, the following:

(i) You unsuccessfully attempted to obtain a representative and need additional time to secure representation;

(ii) Your representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing;

(iii) Your representative has a prior commitment to be in court or at another administrative hearing on the date scheduled for the hearing;

(iv) A witness who will testify to facts material to your case would be unavailable to attend the scheduled hearing and the evidence cannot be otherwise obtained;

(v) Transportation is not readily available for you to travel to the hearing; or

(vi) You are unrepresented, and you are unable to respond to the notice of hearing because of any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have.

20 C.F.R. § 404.936.

Section 404.911 defines good cause for missing a deadline:

(a) In determining whether you have shown that you had good cause for missing a deadline to request review we consider—

(1) What circumstances kept you from making the request on time;

5

(2) Whether our action misled you;

(3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and

(4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.

(b) Examples of circumstances where good cause may exist include, but are not limited to, the following situations:

(1) You were seriously ill and were prevented from contacting us in person, in writing, or through a friend, relative, or other person.

(2) There was a death or serious illness in your immediate family.

(3) Important records were destroyed or damaged by fire or other accidental cause.

(4) You were trying very hard to find necessary information to support your claim but did not find the information within the stated time periods.

(5) You asked us for additional information explaining our action within the time limit, and within 60 days of receiving the explanation you requested reconsideration or a hearing, or within 30 days of receiving the explanation you requested Appeal Council review or filed a civil suit.

(6) We gave you incorrect or incomplete information about when and how to request administrative review or to file a civil suit.

(7) You did not receive notice of the determination or decision.

(8) You sent the request to another Government agency in good faith within the time limit and the request did not reach us until after the time period had expired.

6

(9) Unusual or unavoidable circumstances exist, including the circumstances described in paragraph (a)(4) of this section, which show that you could not have known of the need to file timely, or which prevented you from filing timely.

20 C.F.R. § 404.911.

The plaintiff alleged disability beginning on December 26, 2021, due to generalized anxiety disorder; post-traumatic stress disorder (PTSD); and schizoaffective disorder, depressive type. Tr. 288, 356. After adverse determinations at the initial, Tr. 57–68, and reconsideration, Tr. 69–79, levels, she requested a hearing before an ALJ, Tr. 105–07.

On March 8, 2024, the Social Security Administration (SSA) issued the plaintiff and her non-lawyer representative at that time, Valarie Duhart, a "**Remote Hearing Options**" notice describing the methods of appearing at a hearing, including remotely by telephone, online video from a private location, and video teleconference (VTC) from an SSA site. Tr. 113–30. The SSA explained that if the plaintiff does not agree to a telephone hearing, the hearing will be held by telephone only in "extraordinary circumstances." Tr. 113.

On March 11, 2024, the SSA sent the plaintiff and Duhart a letter explaining the use of VTC and the deadline to object to appearing by VTC:

> If we schedule your appearance by VTC, you and the ALJ will be at different locations during the hearing. A large, color monitor will enable you and the ALJ to see, hear, and speak to each other. The ALJ will also be able to see, hear, and speak to anyone who comes with you to the hearing. …. We will provide someone at your location to run the equipment and provide any other help you may need.
>
> **You must let us know within 30 days after the date you receive this notice if you do not want to appear at your hearing by VTC.** (We may extend the 30-day period if you show you had good cause for missing the deadline.) **Please let us know by completing**

7

**and returning the attached form in the envelope we sent your representative.** We will arrange for you to appear in person.

Tr. 141. The SSA included a "Guide to Social Security Disability Video Hearings," which explained that such a hearing would take place at a location that "may be closer to you than one of our hearing offices." Tr. 146.

The SSA scheduled the hearing for August 23, 2024, by VTC at the SSA's office in Gainesville, Florida. Tr. 173–81, 229–30. The SSA issued the plaintiff and Duhart a "**NOTICE OF HEARING**" explaining what the plaintiff had to do if she could not attend the hearing:

**If You Cannot Attend Your Scheduled Hearing**

If you cannot attend your hearing at the scheduled time and place, please call this office immediately at (866) 931-0124 to request a change. You must also submit your request in writing and tell us why you want us to change the time and place of your hearing.

If you object to the time or place of the hearing, you must notify us in writing at the earliest possible opportunity, but not later than 5 days before the date set for the hearing or 30 days after receiving notice of the hearing, whichever is earlier. We assume you received this notice 5 days after the date on the top of the notice, unless you show us that you did not get it within the 5-day period. If you miss the deadline for requesting a change, please tell us why you missed the deadline. I will extend the deadline for requesting a change if I find that you have good cause, as defined in our regulations, for the delay.

If I find that you have a good reason for the requested change, we will reschedule your hearing and will send you another notice at least 20 days before the date of the hearing. If I find that you do not have a good reason for the requested change, you must appear at the time and place shown above or I may dismiss your request for hearing.

Tr. 175 (emphasis omitted).

8

On August 22, 2024— the day before the hearing—the plaintiff's lawyer representative, Gary Fernandes, requested a "one-time" postponement, explaining that he had not received the notice of the hearing, had been unaware of the hearing until the plaintiff called that day asking if she could appear at the hearing by telephone, and needed time to review the file and prepare the plaintiff. Tr. 236–37. The ALJ rescheduled the hearing for January 17, 2025. Tr. 239.

On October 14, 2024, the SSA issued the plaintiff and Fernandes a "**NOTICE OF HEARING**," explaining that the hearing would be conducted by VTC and that the plaintiff was expected to attend the hearing from the SSA's Gainesville office:

**NOTICE OF HEARING**

**Please bring this notice with you, and arrive no more than 15 minutes prior to your hearing.**

If you would like to call a witness to testify at the hearing, please also contact the office to arrange for them to participate in your hearing. Generally, only you and your appointed representative, if you have one, may come into the office unless you have made previous arrangements with the hearing office.

I have scheduled your hearing for:

| Day: | Friday | Date: | January 17, 2025 | Time: 10:00 AM Eastern (ET) |
|------|--------|-------|------------------|------------------------------|
| Room: | | Address: | SOCIAL SECURITY ADMIN 4562 NW 13TH STREET GAINESVILLE, FL 32609 | |

Tr. 239–47, 250–56. The notice repeated that if the plaintiff could not attend at the scheduled place, she should call the hearing office "immediately," and, if she objected to the scheduled place, she must notify the SSA "at the earliest possible opportunity, but not later than 5 days before the date set for the hearing or 30 days after receiving notice of the hearing, whichever is earlier." Tr. 241.

Through an October 24, 2024, "**ACKNOWLEDGEMENT OF RECEIPT (NOTICE OF HEARING)**," the plaintiff agreed to appear at the noticed time and place:

(Check only one)

[✓]    **I will be present at the time and place shown on the Notice of Hearing.** If an emergency arises after I mail this form and I cannot be present, I will immediately notify you at the telephone number shown on the Notice of Hearing.

[ ]    **I cannot be present at the time and place shown on the Notice of Hearing.** I request that you reschedule my hearing because:

_____

_____

_____

NOTE: YOUR REQUEST FOR HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR NOT ATTENDING. THE TIME OR PLACE OF THE HEARING WILL BE CHANGED IF YOU HAVE A GOOD REASON FOR YOUR REQUEST.

Signature: *Gracy Hernandez, Jr. (AO) w/ Jennifer Northrop*    Date: *10/24/24*    Area Code and Telephone Number: *(352)378-5800*

[ ] I have recently moved. My new address is:

Tr. 261.

On December 20, 2024, the SSA issued the plaintiff and Fernandes a "**NOTICE OF HEARING-IMPORTANT REMINDER**," again explaining that the plaintiff had "to be present" at the SSA's Gainesville office. Tr. 262–65.

On January 16, 2025—one day before the rescheduled hearing—Fernandes requested a change in the plaintiff's manner of appearance:

Dear Judge Morris,

The [plaintiff] has a scheduled in person hearing tomorrow from Gainesville, FL at 10 am. We mistakenly filed an Acknowledgment of the Notice of Hearing at exhibit 32B, believing that the hearing was by phone ([plaintiff] included). We are sorry to have made that mistake. I asked the [plaintiff] if she could appear in person, and she said she would prefer to never leave her house (she calls it shut in disorder) and has no ride to make it. I believe it is about an hour and forty-five minutes from Live Oak, Fl to Gainesville, FL. We are asking

10

to change the in person hearing at the Gainesville, FL field office tomorrow to a phone hearing. The [plaintiff]'s phone number is ….

Thank you for your time and consideration and we apologize for any inconvenience this may have caused. If you have any questions, please feel free to call or write.

Tr. 267; *see* Tr. 266, 268 (SSA reports of phone calls from Fernandes).

The plaintiff did not appear at the SSA's Gainesville office for the hearing, and the ALJ conducted it as scheduled by VTC with Fernandes present. Tr. 36–56. The following colloquy occurred:

ALJ:   Let me give a brief history. There was an initial request for postponement in this case back in August. Although the request came in just one day before the scheduled VTC, we set it up the same way as today's hearing.

I found good cause because there was – counsel had issues with ERE access. Was it ERE access, counsel, specifically?

ATTY:  Yes, Your Honor. Back and forth with the field office and back and forth with the hearing office to try and see the file a number of times.

ALJ:   All right. I know you were not able to prepare the case well as I thought you would during the normal course of business where you could meet with the [plaintiff] probably a few days before the hearing.

At that time, I found good cause for that. And then I received another … request for delay yesterday afternoon around 5:00 p.m., I think. I still didn't have the actual written request for an additional postponement.

It is dated yesterday so I don't doubt it was submitted yesterday. Even if we ask for more advance notice, you know, it is what it is but I just saw that it was submitted yesterday. However, I'm denying that request for postponement which indicated [the plaintiff] wished to be able to appear by telephone.

11

> I read the cause for postponement and the reason given was she is afraid to leave her house and she lives 90 minutes from the office, maybe a little bit less than that, but whatever it is she doesn't have transportation.
>
> I normally do not find transportation to be good cause for a postponement because I give notice to claimants well in advance of the hearings. I also note that both the originally scheduled hearing and this one were scheduled to be in person by way of VTC. The [plaintiff] did not request to change that and delay the hearing until yesterday.
>
> No mention was made before that but counsel indicated to me that he was unaware that [the plaintiff] had misinterpreted the notice and thought the hearing was by telephone. So where we are right now is counsel is here, obviously, so I'm going to hold an initial hearing in this matter.
>
> The case will not be dismissed but after the hearing I will issue a notice to show cause to [the plaintiff] so she can give me any statement she wants to give. In response to a showing of good cause, I will grant a request for a supplemental hearing.
>
> If there is no good cause shown then I will proceed with a decision in this matter without the benefit of her oral testimony. But the case won't be dismissed unless, of course, she drops the case for some reason.
>
> And that's where we are. Is that a fair summary of what we discussed off the record, Mr. Fernandes?

ATTY:    That is fair, yes, Your Honor.

Tr. 38–40. The ALJ asked Fernandes questions about the plaintiff and her case. Tr. 41–44. The ALJ admitted exhibits without objection. Tr. 44–45. Fernandes gave an "opening statement" to explain the plaintiff's claim. Tr. 45–48. The ALJ asked follow-up questions about drugs and alcohol. Tr. 48–49. A vocational expert testified. Tr. 49–55. The ALJ left the record "open" to give Fernandes an opportunity to submit any additional records. Tr. 55.

12

After the hearing, the ALJ issued the plaintiff and Fernandes a "***REQUEST TO SHOW CAUSE FOR FAILURE TO APPEAR***." Tr. 269–70. The request explained, "If the ALJ decides that you did not have a good reason for missing your hearing, but your representative came to your hearing, the ALJ may decide your claim based on the evidence in your file." Tr. 269–70. Fernandes responded:

Dear Judge Morris,

We received the request to show cause on 02/07/2025, even though it was dated 01/21/2025. We provide the following grounds for missing the hearing. These issues started all the way back at the [plaintiff]'s initial denial. She came to us January 10, 2024 and we put in an appeal for her reconsideration. We mailed out our intake packet to the Gainesville field office the same day. The [plaintiff] received ADLs and all the normal correspondence from DDS, but we were not included in that because we were never put on file. She was denied 02/09/2024 and we put the request for hearing in 02/27/2024 and again re-faxed our attorney paperwork to the field office. We called the Social Security Field office on 04/26/2024, to find out why we were not receiving correspondence and they said there was another rep on file from Meridian Behavioral Health named Valerie Durhart [sic]. On May 1st we submitted a withdrawal notice from Ms. Duhart and resubmitted our intake packet (for the third time) with it. On 06/06/2024, we faxed our intake packet and a Valerie [sic] Duhart withdrawal letter to Jacksonville ODAR. We still were not receiving any correspondence from ODAR or a notice of hearing. The [plaintiff] called us the day before the initial hearing to ask us to appear by telephone because she wouldn't leave her house (due to mental health disorders). We didn't even know a hearing had been scheduled. On 08/22/2024, we requested to postpone the initial hearing and wrote of the [plaintiff]'s desire to appear by telephone. We then resubmitted our attorney paperwork to ODAR's front desk (for the fifth time) and called and spoke with Myra. We were finally put on file, and we made a mistake acknowledging the hearing notice, which was to be in person in Gainesville, FL. When I called the [plaintiff] to prepare for the hearing on 01/16/2025, I realized that the hearing was to be in person at Gainesville, FL. The [plaintiff] said she did not want to leave her house, and that it was a long trip from Live Oak, FL, to the Gainesville, FL field office. I appeared in her stead at the Gainesville field office, in hope that we could loop her in by phone. We ended up

13

having the [plaintiff]'s hearing without her. She would still like to appear and have her hearing. We feel that social security made several errors which caused delays and miscommunication throughout the case. We spent a ton of time trying to fix all of social security's errors. We again understand that we made an error acknowledging the second notice of hearing as an in person hearing, but would ask the court for leniency due to all we went through to get to that point. We understand that having multiple hearings creates delay at the hearing office. However, we ask that another hearing be granted and that we may have the [plaintiff]'s hearing by phone.

Thank you for your time and consideration and we apologize for any inconvenience this may have caused. If you have any questions, please feel free to call or write.

Tr. 275–77.

The ALJ issued the decision in March 2025. Tr. 14–35. He analyzed why good cause was lacking:

A hearing by agency video (20 C[.]F[.]R[. §] 404.936(c)) was held on January 17, 2025, in Gainesville, Florida, and the undersigned presided over the hearing from Port Orange, Florida. The [plaintiff] did not appear despite her earlier agreement to appear by online video, which was confirmed by her representative at the beginning of the hearing. Mark Tasso, an impartial vocational expert, also appeared at the hearing. The [plaintiff] is represented by Gary Fernandes, an attorney.

There was no evidence to support a finding of good cause for the [plaintiff]'s failure to appear at the hearing. The [plaintiff] was previously granted a postponement (Ex. 29B–30B [Tr. 234–38]), at which time the hearing had been scheduled in-person at the Gainesville, Florida, claimant-only video site, where she would be linked by video with the undersigned … (Ex. 20B [Tr. 173–94]). Both sites are part of the Jacksonville, Florida Hearing Office; notably, no request to change the method of appearance was made at that time. The re-scheduled hearing was also scheduled in the same manner as the initial, postponed hearing (Ex. 31B [Tr. 239–60]).

The [plaintiff], through Counsel, waited until one day before the date of the re-scheduled hearing to request—for the first time—to change the method of appearance (Ex. 35B [Tr. 267]). She provided two,

14

unrelated reasons for requesting this last-minute change, the first being that she describes herself as being "shut in" and not able to leave her house, and the latter being that she did not have transportation to the Gainesville, Florida, claimant-only video site (Ex. 35B [Tr. 267]).

Counsel responded to the Notice to Show Cause that the undersigned issued following the [plaintiff]'s failure to appear at the re-scheduled hearing (Ex. 38B [Tr. 275–77]). As noted above, the [plaintiff] previously [c]ited as bases for the last-minute request to change the method of appearance that she is "shut in" and that she lacked transportation to the hearing. If she is "shut in," she should have ensured that she timely requested an audio hearing, and she had two opportunities to timely do so, but did not. Her transportation-related issue is not found to be good cause because she had ample time to arrange transportation or, at a minimum, to timely request a change in the method of appearance for either of the two hearings scheduled in this case, but she waited until the day before the re-scheduled hearing to do so.

The reasons set forth in Counsel's response to the Notice to Show Cause largely focus on perceived errors made by the DDS, none of which is relevant to the issues herein, before indicating that neither he nor the [plaintiff] had noticed that either of the scheduled hearings in this matter were scheduled for an in-person appearance until one day prior to the re-scheduled hearing. In any event, these divergent reasons do not constitute good cause for the [plaintiff]'s failure to appear at the scheduled hearing.

The [plaintiff] submitted or informed the [ALJ] about all written evidence at least five business days before the date of the [plaintiff]'s scheduled hearing (20 C[.]F[.]R[. §] 404.935(a)).

Tr. 17–18.

The ALJ found that the plaintiff has severe impairments of anxiety disorder, depressive disorder, schizoaffective disorder, PTSD, degenerative joint disease, and "status-post fracture of the left ulna, repaired with hardware." Tr. 20. The ALJ found that the plaintiff has no impairment or combination of impairments that meets or medically equals the severity of an impairment in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P,

15

Appendix 1. Tr. 20. The ALJ found that the plaintiff has the residual functional capacity (RFC) to perform light work with mental, postural, manipulative, and environmental limitations. Tr. 23. For mental limitations, the ALJ limited the plaintiff to understanding, remembering, and carrying out only simple instructions; performing only simple, repetitive tasks that are not done at a production-rate pace (e.g., assembly line work); adapting to only occasional changes in a work setting; and having only occasional interactions with supervisors, coworkers, and the public. Tr. 23. The ALJ found that the plaintiff cannot perform her past relevant work but can successfully adjust to unskilled work. Tr. 27–29.

The plaintiff presents no convincing reason for reversal. The ALJ had the authority to set the time, manner, and place of the hearing, taking into account efficiency and circumstances. *See* 20 C.F.R. § 404.936(a), (c). Fernandes said nothing about the plaintiff's alleged inability to attend the initially scheduled hearing when he belatedly asked for a continuance at that time, instead blaming his failure to receive SSA correspondence for the request and its tardiness, having learned about the hearing when the plaintiff asked him if she could attend by telephone. *See* Tr. 236–37. The plaintiff and Fernandes later affirmatively agreed to attend the rescheduled hearing at the place and in the manner described. *See* Tr. 261. The plaintiff and Fernandes were reminded about the place and manner of the hearing approximately a month before the hearing and warned that the plaintiff had to be there. Tr. 262–65. The plaintiff and Fernandes belatedly requested a change in the manner of the hearing, claiming they had thought it would be by telephone, but failed to explain how they determined it would be by VTC from the SSA's Gainesville office, and at that time cited the plaintiff's preference to stay home and lack of transportation. Tr. 266–68. In response to the order to show cause,

16

the plaintiff provided no evidence of either an inability to leave home or a lack of transportation, instead focusing almost entirely on the communications snafus that preceded the ALJ's first continuance and adding very little about the reason for the belated request to appear by telephone beyond that the plaintiff did not want to leave her house and make the assertedly long trip from Live Oak, Florida, to Gainesville. Tr. 276–77. These circumstances demonstrate that the plaintiff and Fernandes failed to follow the regulations, not the ALJ. The ALJ properly considered the plaintiff and Fernandes's cause for changing the manner of appearance, and the ALJ's no-good-cause finding is supported by substantial evidence: if the plaintiff had been "shut in," she would have timely ensured an audio appearance; if she truly had transportation issues, she would have used the ample time between the notice and the hearing to arrange transportation or request a different method or place of appearance. *See* Tr. 17–18.

The plaintiff's reliance on "extraordinary circumstances" in 20 C.F.R. § 404.936(d)(2), *see* Doc. 13 at 4, is misplaced for two reasons. First, § 404.936(d)(2) applies if the SSA schedules the hearing by *audio*. Second, the plaintiff relies on an outdated version of § 404.936. *See* Doc. 13 at 4 (quoting 20 C.F.R. § 404.936(c)(2) (2020)). Section 404.936 was amended effective November 2024 (before the January 2025 hearing, Tr. 36, and the March 2025 decision, Tr. 29). Regardless, even considering the former version ("[W]e will schedule you or any other party to the hearing to appear by telephone when we find an appearance by video teleconferencing or in person is not possible or other extraordinary circumstances prevent you from appearing by video teleconferencing or in person," 20 C.F.R. § 404.936(c)(2) (2020)), as explained above, the plaintiff failed to timely comply with the written objection

17

requirement, *see id.* § 404.936(e) (2020), and failed to show good cause for changing the method of appearance, *see id.* § 404.936(f) (2020).

The plaintiff argues that the ALJ violated her due process rights by depriving her of the opportunity to appear at the hearing. Doc. 13 at 6–7.

The provision of benefits is subject to the constitutional guarantees of due process of law. *See generally Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319 (1976); Program Operations Manual System ("POMS") DI 40515.010. Due process constrains governmental decisions that deprive individuals of property (including disability benefits) and requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 332–33 (internal quotation marks and quoted authority omitted). If a due process violation has occurred, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded ... for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *see, e.g., Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017) (holding in the alternative that remand was unwarranted because the claimant failed to show how any error by the ALJ prejudiced him); *Carter v. Colvin*, 597 F. App'x 501, 503 (10th Cir. 2015) (holding in the alternative that remand was unwarranted because the claimant failed to say what she would have done differently). A court "should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423 (quoted authority omitted). "Generally, there is no prejudice when there is 'sufficient evidence' in the record that allows the ALJ 'to make an informed decision.'" *Brock v.*

18

*Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 748 (11th Cir. 2018) (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007)).

The plaintiff shows neither a constitutional due process violation nor prejudice. As the Commissioner observes, the ALJ complied with guidance when conducting the hearing without the plaintiff. Doc. 19 at 8–9 (citing POMS HA 01240.025). The ALJ considered the evidence the plaintiff provided, and, although the ALJ did not consider the plaintiff's live testimony, the ALJ considered her allegations, her reports, her lawyer's statement, and ample other evidence to make the decision. Tr. 23–27, 45–49.

### 3.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in the … abilities" to perform physical or mental demands of work activities, to perform other demands of work, and to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 404.1520c(c).

19

The most important factors are supportability and consistency, and the ALJ must explain how he considered them. *Id.* § 404.1520c(a), (b)(2). Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The ALJ found that the plaintiff has moderate limitations in concentrating, persisting, or maintaining pace, and explained the reasons for the finding. Tr. 21–22. The ALJ found an RFC with several mental limitations that account for the moderate limitations. Tr. 23. The ALJ summarized the evidence from Meridian Behavioral Health. Tr. 24–25. And the ALJ addressed the medical opinions and prior administrative medical findings:

> As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings discussed below.
>
> The opinions of the DDS medical consultants are persuasive (Ex. 1A [Tr. 57–67], 4A [Tr. 70–79]). The opinions of the two physical medical consultants and the two psychological consultants are highly consistent with one another and with the other evidence of record. Additionally, each source's opinion is well supported by direct citation to the evidence of record. The undersigned also notes that the

20

> regulations consider each of these sources to be a highly qualified, acceptable medical source as well as an expert in Social Security disability evaluation.
>
> The opinion of the consultative examiner, Abdul Sofi, M.D., [is] less persuasive (Ex. 7F [507–14]). Dr. Sofi had the opportunity to examine the [plaintiff], but only one time. Dr. Sofi's findings upon examination are largely supportive of the physical medical consultant's detailed opinions, but the undersigned finds the medical consultant's opinions to be better supported by the record as a whole. Notably, Dr. Sofi's functional assessment largely recites the [plaintiff]'s subjective statements, whereas the medical consultant's opinions are based on the objective evidence of record.

Tr. 26–27. In this way, the ALJ complied with the law on medical opinions and prior administrative medical findings.

The plaintiff points to a "Bio-Psychosocial Evaluation" from Meridian Behavioral Health. Doc. 13 at 8 (citing Tr. 445). In the evaluation, under "Client Information and Presenting Problem" and next to "Symptoms Related to Attention and Cognition," are the statements, "Impulsive behavior noted"; "Client has difficulty sustaining focus"; "[Client] is easily distracted"; and "Client is forgetful." Tr. 445–46. The plaintiff also points to a "Medical Summary Report" from Duhart. Doc. 13 at 8 (citing Tr. 474). In the report, under "Psychiatric History" is the statement, "During the first initial meeting, [the plaintiff] does not keep focus when talking about things. When asked questions, she will continue to talk about other things instead of answering the question. That question will need to be repeated loudly to get [the plaintiff] to answer." Tr. 474. The plaintiff argues, "The ALJ's decision must have included an explanation on the weight assigned to Meridian's medical evidence. Therefore, [the] ALJ erred by failing to state the weight of properly assessing the medical evidence from Meridian Behavioral Health." Doc. 13 at 8. The plaintiff's argument fails. As the Commissioner observes, the statements are

21

not medical opinions. *See* Doc. 19 at 11. Even if they were, the ALJ may not give them specific evidentiary weight. *See* 20 C.F.R. §§ 404.1513(a)(2), 404.1520c(a). To the extent the plaintiff argues the ALJ failed to sufficiently explain the findings, the argument likewise fails. The opinion provides sufficient explanations. Moreover, as the Commissioner contends, the RFC accounts for the plaintiff's mental limitations. *See* Doc. 19 at 11.

**4.**

The Commissioner's final decision is **affirmed**. The clerk is **directed** to enter judgment in favor of the Commissioner of Social Security and against Jennifer Lynn Northrop and close the file.

**Ordered** in Jacksonville, Florida, on May 29, 2026.

Patricia D. Barksdale
*United States Magistrate Judge*